## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WISCONSIN

Kent A. Lehnen,                                                File No:

            Plaintiff,

vs.                                                **COMPLAINT**

Unum Life Insurance Company of America,

            Defendant.

For his Complaint, Plaintiff Kent A. Lehnen states and alleges as follows:

### JURISDICTION AND VENUE

1.    This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*., and principles of federal common law developed thereunder.

2.    This Court has jurisdiction of this action pursuant to 29 U.S.C. §1132(e)(1), ERISA § 502(e)(1) and federal questions under 28 U.S.C. §1331.

3.    Venue is proper in this District under 29 U.S.C. §1132(e)(2), ERISA §502(e)(2), because the Defendant may be found in this District.

### PARTIES

4.    Plaintiff Kent A. Lehnen ("Lehnen") resides in Hudson, Wisconsin.

5.    At all relevant times, Defendant Unum Life Insurance Company of America ("Unum") was the insurer, claims administrator, and fiduciary of a group long term

disability policy ("LTD Plan"), Policy No. 413774 001, as replaced effective December 1, 2018.

6.    At all relevant times, Lehnen was a Group 2 participant in the LTD Plan. The policyholder for the group plan is FHC Health Systems, Inc.

7.    In October 2011, Lehnen was hired by Value Options which later became Beacon Health Options. Beacon Health Options is a subsidiary of FHC Health Systems, Inc., which was acquired by Anthem, Inc. in March 2020.

## LTD PLAN PROVISIONS

8.    The LTD Plan defines disability for Group 2 employees as:

> You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> You have a 20 percent or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> You must be under the regular care of a physician in order to be considered disabled.

9.    The benefit for Group 2 is either 50 percent of the employee's monthly earnings up to a maximum of $8,000/month, reduced by deductible sources of income and disability earnings, or 66.667 percent of the employee's monthly earnings up to a maximum benefit of $15,000/month, reduced by deductible sources of income and disability earnings.

10.    The maximum benefit date for disabilities based on physical conditions applicable to Lehnen is age 65. The lifetime cumulative maximum benefit period for all disabilities due to mental illness and disabilities based primarily on self-reported symptoms is 24 months.

11.    Material and substantial duties means duties that are normally required for the performance of the regular occupation; and cannot be reasonably omitted or modified.

12.    Regular occupation is defined as the occupation the employee is routinely performing when the employee's disability begins. Unum will consider the occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

## UNUM'S ADDITIONAL CLAIMS HANDLING OBLIGATIONS

13.    On November 18, 2004, four substantially identical Regulatory Settlement Agreements ("RSA") were entered into among all Unum companies and the Department of Labor and the Chief Insurance Regulators of All States and the District of Columbia following a multi-state target market conduct examination of Unum's claim handling practices. The RSA required Unum to improve its claim handling practices among other obligations. The RSA requires Unum to give significant weight to evidence of an award of social security disability benefits as supporting a finding of disability, unless Unum has compelling evidence that the decision of the Social Security Administration was (i) founded on an error or law or an abuse of discretion, and (ii) inconsistent with the applicable medical evidence, or (iii) inconsistent with the definition of disability contained in the applicable insurance policy.

14.    In 2005, the RSA was amended to add more protections for claimants including requiring Unum to give significant weight to attending physicians' opinions and to fairly interpret and apply information from attending physicians. The amendment requires that in order to reject an attending physician's opinion, Unum must find that the

attending physician's opinion "is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record."

15.    Unum also has a claims manual that sets out various policies on claims handling. Several policies address Unum's procedures for assessing a claimant's ability to perform the duties of his occupation, including evaluation of subjective symptoms, functional capacity, and occupational demands.

16.    The claims manual also requires claim evaluations to consider all available information, including both medical signs and subjective symptoms, when reaching a claim determination.

## FACTUAL ALLEGATIONS

17.    Lehnen's employer provides Employe Assistance Program ("EAP) services including crisis intervention or crisis management to clients. Lehnen's client base consisted of Fortune 50/100/500 companies, school districts, police departments, and clergy.

18.    Lehnen's position was always homebased. He often worked on his computer 10-12 hours per day.

19.    Lehnen spent most of his workday on his computer, responding to emails, dealing with real time crisis events, preparing and reviewing reports, negotiating and writing contracts, creating marketing materials, and working with spreadsheets, databases, updating budget, hiring, seeking, and reviewing resumes, preparing payroll, and invoicing.

20.    As a Senior Account Executive, Lehnen was responsible for managing the account executives along with managing his own clients which were typically Fortune 500 companies.

21.     Lehnen has several medical conditions including persistent postural-perceptual dizziness (PPPD), bilateral carpal tunnel syndrome, Dupuytren's contracture, degenerative arthritis, cognitive decline, restless leg syndrome, REM, sleep behavior disorder, chronic pain, cervical disc degeneration, anxiety, and depression.

22.     Lehnen was diagnosed with PPPD in 2015 by Mayo Clinic. At that time, Lehnen took a leave of absence but was able to return to work following treatment with reasonable accommodations provided by his employer.

23.     Lehnen's symptoms of PPPD started to reoccur at a progressively increasing rate in 2019.

24.     In May 2019 Lehnen reduced his hours to a 30 hour per week schedule. The demands of his occupation would not allow him to continue reduced hours and by November 2019, the accommodation by his employer was discontinued and Lehnen was forced to return to a full-time schedule.

25.     Lehnen began to have significant dizziness associated with his PPPD condition and issues with his cognition, especially when using his computers with multiple screens.

26.     Lehnen elected the buy-up, option 2 coverage providing a benefit of 66.6667 percent as of January 1, 2017.

27.     Lehnen was placed on medical leave on April 16, 2020 due to his increased symptoms. Unum also served as leave administrator for Lehnen's employer and approved his continuous leave of absence.

28.    Lehnen submitted a disability claim with Unum telephonically on April 28, 2020. Unum's file shows that Lehnen reported the reason for his leave as PPPD. Lehnen provided the name of his psychiatrist, James McCoy, M.D. (the only physician he was able to see immediately) and Dr. Eggers, Neurologist.

29.    Unum sent an attending physician statement to Dr. McCoy to be completed. Dr. McCoy completed the form listing the primary mental health diagnosis as dysthymic disorder and secondary diagnoses of generalized anxiety disorder and attention deficit disorder. Dr. McCoy indicated Lehnen had physical restrictions and had upcoming appointments with a cardiologist and with Mayo Clinic regarding his PPPD symptoms.

30.    Unum conducted a detailed internet investigation on Lehnen.

31.    Unum conducted another interview of Lehnen on July 29, 2020. Lehnen informed Unum that he was being seen at Mayo Clinic for PPPD and that the PPPD causes his eyes not to track motion and he becomes dizzy and nauseated from motion or from light. Lehnen informed Unum that the anxiety and depression stems from his PPPD.

32.    Lehnen relayed that the worse thing for him is scrolling on a computer screen. He stated his job required him to be on the computer nonstop. Lehnen also informed Unum that arthritis in his hands slowed his typing, and he had been treated with rounds of steroids. Lehnen reported that Dr. Eggers at Mayo Clinic was supporting his disability.

33.    Unum received information from Lehnen's supervisor on July 30, 2020, that Lehnen had been previously accommodated and had taken leave due to difficulty with computer work and scrolling and that his day-to-day work required ongoing work on the computer.

34.    As of August 11, 2020, Unum still had not made a decision on Lehnen's claim. In a telephone call with Unum that day, Lehnen explained that his psychiatrist was the only doctor he could get in to see when he went on leave and that he was not able to get into Mayo Clinic until July 2020. The Unum representative informed him that Unum did not yet have records from his psychiatrist to support the disability prior to July 2020.

35.    ERISA regulations required Unum to make a decision within 45 days of receipt of the claim, which can be extended if Unum requests information from the claimant.

36.    In late August 2020, Unum notes that it could not determine Lehnen's occupation. Lehnen completed a work experience and education questionnaire and attached a job description for his senior account executive position and submitted it to Unum on August 31, 2020.   The job description states the position is a leadership role with management responsibilities that include participation in corporate initiatives, coordination of activities requested by executive management. It lists as a job requirement an expert and proficient level of technical knowledge, skills, and abilities in Microsoft Office software.

37.    Despite this, Unum conducted a vocational analysis and determined that the occupation that most closely matches his duties was "account executive." The description for the account executive did not include any duties relating to leadership responsibilities, which Lehnen had.

38.    Unum received the Mayo Clinic records on October 15, 2020. The records include confirmed his symptoms were due to PPPD.

39.    An audiology evaluation on July 27, 2020, reported that Lehnen's biggest triggers for PPPD continue to be scrolling/reading computer and walking in a grocery store or restaurant.

40.    Vestibular testing on July 27, 2020 showed deficits. A vestibular physical therapy note on September 14, 2020 states that Lehnen continued to have visual sensitivities. An assessment by Shirlene Sampson, M.D., Psychiatrist, on September 16, 2020 included the following diagnoses: cognitive disorder, NOS; dizziness; generalized anxiety disorder; recurrent depression, in remission. The results of the Montreal Cognitive Assessment produced a score of 21/30, indicating impairment.

41.    Unum gave notice to Lehnen on October 26, 2020 that it was approving the claim through the date he had scheduled for neuropsychological testing on December 14, 2020. Unum's file continued to list Lehnen's reason for being out of work as due to dysthymic disorder and general anxiety disorder, ignoring the multiple physical diagnoses.

42.    Unum identified Lehnen's claim as a candidate for Social Security disability and referred his claim to its Social Security vendor, Genex. Genex filed a Social Security disability claim on behalf of Lehnen on December 24, 2020.

43.    Lehnen was evaluated by numerous specialists at Mayo Clinic in December 2020. An MRI of his cervical spine on December 23, 2020 showed mild to moderate degrees of multi-level central canal stenosis and multi-level facet arthropathy. Bilateral C2-3 facet injections were recommended.

44.    Lehnen was seen by a sleep medicine specialist on December 16, 2020 who was concerned that he had probable REM behavioral disorder. The physician recommended

an in-lab sleep study to confirm the diagnosis. The physician's impressions from that sleep study were: (1) mild positional mixed obstructive and central sleep apnea; (2) idiopathic REM sleep behavior disorder; (3) restless leg syndrome; (4) excessive periodic limb movements. It was noted that the REM sleep behavior disorder puts Lehnen at a risk of Parkinson's, potentially dementia of Lewy Body, multiple systems atrophy and less likely pure autonomic failure. The neuropsychological evaluation report states the findings were likely due to depression, anxiety, and PPPD.

45.     Lehnen was seen by an orthopedic surgeon on December 17, 2020 who diagnosed him with carpal tunnel bilaterally.

46.     Lehnen was seen by a neurologist on December 16, 2020 who noted that the x-ray of his spine showed substantial degenerative disc disease at C3-6 with mild subluxation and slight cervical scoliosis.

47.     Lehnen had an ultrasound of his hands which showed on his right hand mild hyper vascular synovitis at wrist and third MCP; mild gray scale synovitis throughout the wrist, MCPs and PIPs. On the left hand it showed mild hyper vascular synovitis at the wrist and second and third MCPs; and mild gray scale synovitis scattered throughout the wrist, MCPs, and PIPs. Twenty visits of hand therapy were ordered.

48.     The physical therapy visit on December 30, 2020 noted on exam mild edema, arthritic nodules in multiple joints, left hand palmar Dupuytren's cording in the fourth and fifth ray; and numbness bilateral median nerve distribution.

49.     Unum obtained the updated Mayo Clinic records and conducted a review. On February 1, 2021, Unum concluded that Lehnen did not have a verifiable physical condition

which would lead to functional loss from his own occupation and that to date all symptoms appear to be caused by anxiety/depression. The recommendation was to monitor behavioral health treatment and update records in four months.

50.    Unum's file states it linked the LTD claim and Lehnen's life insurance waiver of premium claim together. On February 8, 2021, the life insurance waiver of premium claim was approved.

51.    Unum's Claims Manual requires that it give notice to claimants if the claim is being paid under the mental and nervous limitation. Unum did not give notice to Lehnen until August 20, 2021 that his disability was being paid under the mental and nervous limitation.

52.    Lehnen  spent the week at Mayo Clinic in November 2021 and saw numerous specialists.

53.    Lehnen had another neuropsychological evaluation on November 4, 2021. The evaluation continued to suggest relative weakness in visual motor processing speed and weakness in visual learning.

54.    A brain MRI on November 4, 2021 showed a combined hippocampal volume drop from 36 to 15 from the MRI in 2020. Reduced hippocampal volumes are associated with deficits in visual and verbal memory performance.

55.    A PET CT of the brain on November 4, 2021 showed very mild hypometabolism within the occipital predilection with the primary visual cortex relatively preserved.

56.    A neurology note on November 3, 2021 states that Lehnen has gradual cognitive decline with questionable impairment and functioning with some superimposed difficulties related to other medical problems. focused on Lehnen's cognitive. The short test Kokman score was 34/38, indicating impairment. The neurologist felt that Lehnen's multiple medical problems may be contributing to cognitive difficulties. On November 19, 2021, after reviewing the neuropsychological evaluation, the neurologist noted there was no clear evidence of a decline compared to 2021 but that a very early neurodegenerative disease could not be ruled out.

57.    A vestibular physical therapy visit on November 3, 2021 showed continued visual sensitivities suggested of PPPD.

58.    In December 2021, Unum conducted another detailed internet investigation on Lehnen.

59.    Alyssa Johns, RN, conducted a medical review on behalf of Unum on December 16, 2021. Ms. Johns opined that Lehnen's PPPD condition did not support a functional loss because he was able to work with the condition prior to his leave of absence and the records did not indicate a worsening of his condition. Ms. Johns opined that Lehnen's neck pain would not preclude him from his occupation. Ms. Johns opined that Lehnen's hand pain would not preclude him from his occupation, indicating he had only mild arthritis.  Ms. Johns opined that Lehnen's cognitive difficulties would not preclude him from his occupation.

60.    On December 22, 2021, Lehnen informed Unum that Mayo Clinic referred him to a research study for Lewy Body dementia patients. Lehnen relayed that the study is for people who are showing indications that they have Lewy Body dementia.

61.    On January 1, 2022, Lehnen's psychiatrist responded to questions from Unum 1, 2022. In response to how Lehnen's daily activities are impacted by his symptoms, the psychiatrist stated that Lehnen must limit his computer work to 15 minutes per hour due to PPPD and neck pain, that his hands limit his ability to grab and type, and that he is unable to sit for long periods as ordered by his orthopedic physician following occupational testing. The psychiatrist stated that Lehnen does not appear to have limitations due to PTSD but due to PPPD.

62.    On January 11, 2022, a medical consultant on behalf of Unum sent additional questions to Lehnen's long-term treating psychiatrist and indicated that it was his opinion that the findings did not support Lehnen's lack of full-time sustained capacity to perform his occupational demands. The psychiatrist responded that he did not agree with the medical consultant.

63.    Unum's medical consultant (clinical psychology) provided an opinion that Lehnen's psychiatrist's opinion was not well supported by the data and deferred to a general medical physician the analysis of potential physically impairing conditions.

64.    Another mental health review was conducted by Unum's Designated Medical Officer, Audrey Longson, D.O, Psychiatry. Dr. Longson opined that Lehnen's psychiatric symptoms did not preclude Lehnen from working.

65.     Unum physician, James Haller, M.D., Family Medicine, contacted Lehnen's therapist but did not conduct a medical review or request input from Lehnen's physicians for his physical conditions.

66.     Unum issued a letter on February 3, 2022 giving notice to Lehnen that it was terminating his benefit effective February 4, 2022. The letter states that Unum determined his regular occupation to be an "account executive." The letter states that Unum determined Lehnen's mental health conditions no longer rise to a level of severity which would prevent him from performing the demands of his regular occupation on a full-time basis. The letter further states that Unum determined Lehnen's conditions of PPPD, reports of cognitive decline, neck and hand pain would also not prevent him from performing the demands of his regular occupation. The letter states that the decision does not affect Lehnen's life insurance waiver of premium claim.

67.     Lehnen retained his current counsel. After reviewing Unum's claim file, counsel wrote to Unum on March 21, 2022. The letter requested additional relevant information, which was referenced by Laura Feeney, Vocational Consultant. Counsel also requested an explanation of how Ms. Feeney arrived at her conclusion that Lehnen's regular occupation requires only "occasional" keyboarding use and also noted that Unum had not considered Lehnen's correct regular occupation of senior account executive. The letter also pointed out that the termination letter did not provide perfection information as required by ERISA regulations for a full and fair review.

68.    Unum responded on March 23, 2022 providing additional information but stated Unum was unable to share other information sources. Unum did not respond to counsel's other requests.

69.    On July 28, 2022, Lehnen submitted an appeal to Unum consisting of a detailed letter and additional medical evidence and an independent vocational assessment.

70.    The letter provided a summary of Lehnen's claim history with Unum pointing out that the medical reviews paid little attention to his physical conditions. The letter also discussed the flaws in Unum's vocational reviews.

71.    The appeal letter explained that Unum failed to fully and fairly review Lehnen's claim based on his physical conditions. The appeal letter went through each of Lehnen's physical conditions discussing the medical evidence supporting disability.

72.    The appeal letter pointed out several references in the medical records to Lehnen's symptoms from PPPD which caused visually-induced dizziness from scrolling on computer screens. The appeal letter pointed out evidence that contradicted Unum's position that no treating physician supported limitations from his physical conditions. Dr. Eggers and Dr. Feyereisn, both at Mayo Clinic, provided restrictions, limiting his computer use.

73.    The appeal letter discussed the objective evidence supporting Lehnen's cognitive difficulties.

74.    The appeal letter pointed out that Alyssa Johns failed to discuss Lehnen's sleep disorders which, along with Lehnen's cognitive difficulties, gave his providers concerns for early neurodegenerative disorder. The appeal letter discussed medical evidence which reports that Lehnen has significant fatigue, both physical and mental.

75.    The appeal letter explains the lack of analysis by Alyssa Johns regarding Lehnen's hands, wrists, and neck conditions. The appeal letter discusses evidence in the record supporting Lehnen's consistent reports of worsening pain in his hands which made it difficult to type.

76.    The appeal letter complains that Unum did not use Lehnen's correct occupation and considered only generic physical and mental/cognitive demands rather than the actual duties of his regular occupation.

77.    The appeal letter discusses the error of Unum's vocational consultant's conclusion that Lehnen's regular occupation requires only "occasional" keyboarding. The appeal letter points out that this conclusion is inconsistent with Unum's vocational consultant's opinion that the visual demands of the position (reviewing contracts, communications with customers, handling account information) is at a "frequent" level because those demands are primarily computer-based.

78.    The appeal evidence included a disability accommodation request form completed by Dr. Feyereisn on January 16, 2021. Dr. Feyereisn lists the following physical impairments:  idiopathic REM sleep behavior disorder, PPPD, mixed obstructive and central sleep apnea, degenerative joint disease affecting his neck and hands. Dr. Feyereisn stated that Lehnen's high level executive functioning was impaired; his degenerative joint disease interfered with his computer duties; and his PTSD interfered with his performance under stress.  Dr. Feyereisn indicated that the duration of his impairment was lifelong. Dr. Feyereisn indicated that Lehnen cannot perform all job duties because he likely has reduced

executive function and could not perform in a supervisory capacity; extended keyboard work may represent a problem; and performance under stress is likely impaired.

79.     The appeal evidence included a letter from Lehnen's psychiatrist who stated he has known Lehnen for over ten years and has observed a notable increase in Lehnen's symptoms including a decline in his cognition. He states Mayo Clinic's assessments of cognitive disorder and cognitive decline are consistent with his own observations and assessment.

80.     The appeal evidence included a letter from Mary Jurisson, M.D., Orthopedic Surgery, Mayo Clinic. Dr. Jurisson recommended restrictions due to his arthritis of typing no more than 25-30 minutes at a time with a 10-30 minute break in between sessions.

81.     The appeal evidence included a vocational expert report of Ken Askew. Mr. Askew provided an opinion that Unum's vocational assessment was unreasonable and that based on his review of Lehnen's history and pertinent records and his assessment of Lehnen's employability, Lehnen is not capable of working in his regular occupation. Mr. Askew opined that Lehnen's occupation as performed in the national economy includes frequent keyboarding and continuous computer screens, and that Lehnen's restrictions and limitations would prevent him from performing his occupational duties.

82.     The appeal evidence included a Declaration of Brenda Sauro, Lehnen's spouse. The Declaration provided Ms. Sauro's personal observations of the impact of his medical conditions on his ability to work and perform daily life activities.

83.     The appeal evidence included updated records from Mayo Clinic. The Mayo Clinic records included an occupational functional assessment. The occupational therapist

assessment included diminished extremity sensation which could result in reduced speed for coordination tasks; and significant increase in edema after 30 minutes of typing and after 60 minutes of typing. Based on the results of the testing, the occupational assessment provided the following restrictions:  rare typing with his right hand; occasional typing with his left hand; and extra time needed to complete typing tasks.

84.    The Mayo records included a follow-up appointment regarding Lehnen's sleep disorders. The assessment states that his restless leg syndrome was not under control and was the primary ideology of his sleep disturbance.

85.    The Mayo records included further evaluation of Lehnen's neck pain. Recommended restrictions included changing positions every 60 minutes when using a computer or driving with at least a 30 minute break before resuming the activity, avoiding prolonged cervical flexion and extension, probably avoiding more than 3-5 minutes of extreme cervical flexion and extension; and avoiding activities that put him at high risk of a fall; avoiding prolonged sitting;.

86.    Following a review, Unum sent a letter on September 19, 2022, enclosing new information and giving notice of Lehnen's right to respond. The new information included reviews by a vocational rehabilitation consultant, two mental health reviews, and a review by an occupational medicine physician.

87.    The new vocational review by Kelly Marsiano indicated that she agreed Lehnen's occupation requires significant typing. Ms. Marsiano states that reading emails and performing scrolling functions on the computer is required for the performance of the occupation and that the amount of typing on the computer is not easily quantifiable. Ms.

Marsiano concludes that taking a 10–30-minute break with no typing after typing 20-30 minutes throughout the day would limit the ability to perform the occupation.

88.     The occupational medicine physician, Scott Norris, M.D., concluded that Lehnen's reported activities were consistent with having the capacity to perform the demands of his sedentary level occupation. Dr. Norris was not provided with the new vocational information for his review.

89.     Prior to Lehnen responding to Unum's reviews, Lehnen received notice that he had been awarded disability benefits by the Social Security Administration with a disability date of April 2020.

90.     Lehnen submitted a response to Unum's reviews on October 26, 2022. The response included a detailed letter explaining the unreasonableness of Unum's reviews and also provided a copy of the Notice of Award from the Social Security Administration.

91.     The October 26, 2022 response letter complained that Unum's reviews provided scant analysis explaining why Lehnen is not limited from performing the material and substantial duties of his occupation in comparison to the support provided for his claim.

92.     The October 26, 2022 response letter stated that Unum was required under ERISA regulations to have the information reviewed by a health care professional with the appropriate training and experience in the field of medicine involved in the medical judgment, which Unum did not do.

93.     Regarding Lehnen's hands/wrists conditions, the October 26, 2022 response letter points out that the medical records reflect a worsening of Lehnen's hands from 2020 to 2022 and that Dr. Norris was incorrect that he had only mild polyarticular degenerative

joint disease. Two Mayo Clinic physicians concluded that Lehnen had severe degenerative joint disease.

94.     The October 26, 2022 response letter states that Dr. Norris unreasonably rejected the functional capacity examination of Lehnen's hands based on his claim that the profound level of globally diminished sensation noted in the examination was not noted in other medical records. The letter discusses information and other records supporting his diminished sensation.

95.     The October 26, 2022 response letter states that Dr. Norris failed to provide analysis regarding Lehnen's PPPD condition and the medical literature showing Lehnen's symptoms are consistent with his diagnosis.

96.     Regarding cognitive impairment, the October 26, 2022 response letter claims that Dr. Norris failed to address much of the objective evidence supporting cognitive weaknesses.

97.     Regarding Lehnen's sleeps disorders, the October 26, 2022 response letter states that Dr. Norris failed to fully analyze each of Lehnen's sleep disorders.

98.     The October 26, 2022 response letter complains that Lehnen provided a comprehensive expert vocational report with his appeal and that Unum's failed to address much of it and failed to acknowledged that Unum's own vocational assessment concluded Lehnen's restrictions prevented his ability to perform his occupation.

99.     On October 9, 2022, Lehnen sent his SSA file to Unum, noting that the SSA found disorders of the skeletal spine as the primary disabling condition; and that the SSA found Lehnen's medically determined impairments could easily be expected to produce his

alleged symptoms (pain, loss of sensation, weakness, fatigue, understanding and memory limitations, sustained concentration, and persistent limitations, social interaction limitation, inability to adapt limitations). Lehnen also noted that the SSA found him disabled without having all the information that was provided to Unum, including the hand functional capacity evaluation, the expert vocational review, the reports from three treating physicians, and a certified nurse practitioner supporting disability and providing restrictions and limitations, because Genex failed to provide the SSA with updated medical information.

100.    A month later on December 8, 2022, Unum sent a letter along with new evidence and again informed Lehnen of his right to comment. The new reviews included a review by an income offset consultant and a vocational rehabilitation consultant. The vocational consultant, who stated on August 15, 2022, that the amount of time on the computer typing for Lehnen's occupation is not easily quantifiable and that taking a 10-30 minute break with no typing throughout the day would limit the ability to perform the occupation, now reported that the occupation required only occasional handling, fingering, and keyboard use.

101.    Unum determined after review of the SSA file, that the SSA finding of disability was based primarily on mental health conditions, despite the SSA finding that the physical conditions were primary and the mental health conditions secondary. Based on this, Unum determined that Lehnen continued to be disabled due to mental health conditions and was entitled to benefits only through July 18, 2022.

102.    Lehnen submitted a response letter on December 16, 2022 that noted that Unum had not addressed the concerns set forth in the October 26, 2022 response letter.

103.    The December 16, 2022 letter noted that Unum continued to take the erroneous position that Lehnen's occupation requires only occasional typing.

104.    The December 16, 2022 letter points out that Lehnen's claim was based on physical conditions from the start and therefore the mental health limitation should not have applied. The letter noted that Unum did not address the points submitted by Lehnen regarding the SSA findings.

105.    The December 16, 2022 letter also noted that Unum had not complied with its requirements under the RSA to give weight to all diagnoses and impairments and their combined effect on the whole person; giving significant weight to attending physician opinions; fairly interpreting and applying information from attending physicians; and representing medical and vocational facts accurately.

106.    On January 4, 2023, Unum issued a final decision. Unum determined that Lehnen is disabled due to mental illness and is not disabled due to physical conditions, and that due to the 24 month mental health limitation, benefits would be payable only through July 18, 2022.

107.    The appeal decision stated that based on new information provided on appeal, Unum determined that Lehnen remained disabled under the life insurance policy and eligible for the waiver of premium benefits. The appeal denial letter did not address the concerns submitted to Unum on December 16, 2022.

108.    Unum's appeal denial letter stated that the physical residual functional capacity assessment completed by the SSA concluded Lehnen could physically perform light level physically demanding work. The letter listed Lehnen's abilities to perform certain

21

activities. This list included that Lehnen is limited in his ability to push/pull with his upper extremities, bilaterally, including the operation of hand controls; that Lehnen is limited in his ability to reach in front and/or laterally with his left upper extremity; that Lehnen is limited in his ability to reach overhead with his right upper extremity; that Lehnen is limited in his ability to perform handling (gross manipulation) and/or fingering (fine manipulation), bilaterally; in addition to other limitations. Unum claimed that the SSA found that the significant impairment was the secondary diagnosis of mental health conditions. Unum claimed that its decision that Lehnen is not disabled due to physical conditions is consistent with the SSA determination that he has capacities to perform light physical demand work.

109.    Unum claimed that it had considered Lehnen's contentions and concerns as part of its appeal evaluation and that all information had been thoroughly and fairly considered.

110.    Unum's appeal decision claims that the appeal vocational review fully considered Lehnen's material and substantial duties and that the restrictions noted by the vocational review did not alter the occupational demands which include occasional keyboard use.

111.    Unum's appeal decision acknowledges the concerns that the medical reviews were not completed by specialists. Unum responded that their reviewing physicians were board certified in family, occupational, and aerospace medicine and were qualified to review the documentation.

112.    Unum's appeal decision included provisions from the life insurance policy, which is the first time Unum provided any information regarding the life insurance policy

or standards. The letter noted that the definition of disability under the life insurance policy is:  during the elimination period, you are not working in any occupation due to your injury or sickness; and after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education, or experience.

113.   Lehnen has exhausted his administrative remedies.

114.   The LTD Plan does not contain any discretion granting language; therefore, Unum's decision making is not entitled to deference.

**COUNT ONE**
**CLAIM FOR BENEFITS DUE PURSUANT TO 29 U.S.C. §1132(a)(1)(B)**

115.   Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

116.   Plaintiff has submitted sufficient proof to support that he is disabled from physical conditions under the terms of the LTD Plan and remains disabled from physical conditions since the date benefits were terminated.

117.   Unum failed to comply with ERISA regulations to permit a full and fair review of Lehnen's claim. Unum failed to have the evidence reviewed by a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. 29 C.F.R. § 2560.503-1(h)(3)(iii). Unum failed to provide in its initial denial letter a description of any additional material or information necessary for Lehnen to perfect his claim and an explanation of why such material or information was necessary. 29 C.F.R. § 2460.503-1(g)(iii).

118.    Unum failed to comply with its claims handling requirements under the RSA and Unum's Claims Manual.

119.    Unum's termination of Lehnen's LTD benefit violates ERISA. 29 U.S.C. § 1132(a)(1)(B).

120.    Unum's actions and decision making constitute a breach of the LTD Plan, the RSA, and Unum's Claims Manual.

121.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendant for its benefit due under the LTD Plan, including reinstatement of his LTD claim, retroactive and ongoing disability benefits, interest, and reasonable attorneys' fees and costs.

## COUNT TWO
## ATTORNEYS' FEES AND COSTS

122.    Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

123.    Plaintiff has been forced to bring the within action as a direct result of Unum's actions. As a direct result of Unum's acts and failures, Lehnen has incurred attorneys' fees and costs. Plaintiff is entitled to recover his attorneys' fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, Plaintiff Lehnen requests that the Court:

(1)    Adjudicate that Plaintiff meets the definition of disability under the LTD Plan and is entitled to continuing benefits.

(2)    Adjudicate that Plaintiff is awarded retroactive monthly benefits under the LTD Plan since the date benefits were terminated plus interest.

(3)    Reinstate Plaintiff's claim and commence the payment of monthly benefits going forward from the date of judgment according to the terms of the LTD Plan.

(4)    Award Plaintiff his costs, disbursements and other expenses of this litigation and reasonable attorneys' fees pursuant to 29 U.S.C. §1132(g).

(5)    Award such additional and further relief as this Court may deem just and proper.

Dated:  03/23/2023                    **NOLAN, THOMPSON, LEIGHTON**
                                      **& TATARYN, PLC**


                                      By  /s/ *Denise Y. Tataryn*
                                      Denise Y. Tataryn (#179127)
                                      1011 1st Street South, Suite 410
                                      Hopkins, MN  55343
                                      Phone: 952-405-7171
                                      Fax:    952-224-0647
                                      Email:  dtataryn@nmtlaw.com

                                      ***Attorney for Plaintiff***